Mr. Davis. May I proceed? Yes. Good morning, Your Honor. Good morning. I'm Scott Davis. I represent Mike Anderson in this matter, who is the appellant. Mr. Anderson raises two issues on appeal. The first having to do with the sufficiency of the evidence that was presented at trial, and the second having to do with a denial of a defamation charge. And the defense request for the lead prosecutor for the prosecution to be recused in this matter. Regarding the sufficiency, the first issue that's raised, we're asserting that no rational trier effect could have determined that Mr. Anderson was guilty based on the evidence that was presented. I will note, Your Honor, we have cited to this Moreland case in our brief, and I did not appreciate Moreland to have been expressly overturned, though I do recognize that this... So the equipoise rule, you're not relying on that. You're just saying self-defense, even though it was properly instructed, no juror could not have found self-defense. Specifically on the self-defense issue, Your Honor, yes. I recognize this court is abandoned. And what about the district court and the evidence and witnesses all saying he's crawling away when he gets shot? Why doesn't that justify the verdict just there? Your Honor, our position would be a couple of things. We're focusing specifically on the self-defense piece of this, and so there's not really any real dispute over whether Mr. McMillan was shot during the... As he crawled away. Well, that was Mr. McMillan's testimony. How many times was he shot? I believe it was four. Four times that he was said to have been shot. Mr. McMillan testified that, yes, as Your Honor stated, that Mr. Anderson pulled a gun out of the car and shot him as he tried to crawl away. There were other things that were introduced as well. A statement that Mr. Anderson gave to the investigating FBI agent was also introduced, both a transcript of that video as well as the entirety of the video itself. Mr. Anderson stated, of course, that Mr. McMillan had the gun first, had threatened him with it. And the district court credited that as sentencing, right? The district court said, yeah, he did. The district court seemed to credit that as sentencing. It was not just Mr. Anderson's statement, but a statement that came in through the case agent who testified of one of the other alleged victims of this matter, Tanya Anderson, who also apparently told that case agent and the case agent acknowledged at trial that she said that Mr. McMillan had the gun first and fired it off a couple of times in the air. I recognize, Your Honor, that the equipoise rule has been abandoned. I did not necessarily read the Vargas Ocampo decision, the en banc decision in which that rule was abandoned. I didn't necessarily read that to say that the court would not consider the evidence that was presented at trial that would be consistent with the theory of innocence versus the theory of defense. And so, yes, we have Mr. McMillan's testimony. We also have these other things, the testimony of the case agent and other things that came into play. Our position is that based on the totality analysis of those things, that no rational trier of fact could have found guilt there. Great. We also raise an issue, Your Honor, regarding the recusal of Mr. Kevin Payne, who is lead counsel for the prosecution in this matter. And we have cited to the American Airlines case that has been that was decided in 1992 in this court and has been the rationale has been used in a number of cases. Could you point me to any circumcision that's applied that civil rule to the criminal context? I can't. And that's one of the things that I want to raise. But yet that you both parties agreed that's the test that we should apply to resolve this case. It's the test that's out there. And it's the one that you endorse below and it's the one you press to us. It's what we have to go on right now. But I'm just being quick to save you time. But if it's essentially the substantial relation test and then Anderson was cross examined in the pretrial hearing and Anderson is asked, what's the relationship between the two? And he says, no, none, sir. Isn't that conclusive of the test? No, I don't think so. Your Honor. Our position on the substantial relationship test would be this. That's derived from the rule 1.9 of the Mississippi rules modeled after the ABA rules, which say that a lawyer who is formally represented a client in a case shall not thereafter represent another in the same or substantially related matter. The prosecution has argued, and of course the district court found ultimately after the magistrate's decision, that they were not substantially related. The prosecution had argued that they're separated in time, they're separated in time, they're separated in location. Well, not the same victim, not the same crime 10 years earlier. It's pretty distant, but really for me, I'll just say it again. On cross in the disqualification hearing, he is. Anderson himself is asked, are there any events of the 2006 related to what happened in May 2021? No, sir. No events related. Isn't that determinative? I don't think so, because I don't think they have to be related. Your Honor. But it's called the substantial relations test. I understand. But in American Airlines itself, this court held that the two representations need only involve the same subject matter in order to be substantially related. Subject matter is a good bit broader than the idea of is this exact same case or not. So what's the subject matter then? In this case, the previous case, during a period of time where Mr. Payne was counsel on the Choctaw Reservation and was working for legal services there, the information in his declaration and what the court determined was that he had been appointed to represent him at an arraignment, and then shortly thereafter ceased working for them and it was given to someone else. I'm a public defender. I've been doing this for a bit of time. And when I get appointed to represent somebody, I don't represent them for the moment that I'm standing with them in the courtroom. When we're appointed to represent them, confidence attaches, an expectation of loyalty attaches that moves forward at least until that's terminated. And even if this were a brief period of time, the matter that he was appointed for back in 2007, I believe it was, and in this case, these were both criminal matters. They both arise from the Choctaw Reservation. You're saying he'd be disqualified from representing the government in any criminal matter adverse to that thing? I would propose adopting essentially that standard because, and this is one of the things. But counsel, answering that way, that is not the substantial relationship test. That's saying regardless of a relationship, you didn't brief it to us that way. Yes, sir. You could have said any appearance of impropriety and given us case law on that point. You could have pointed to the record to say here's where confidences were taken and used. Those would be different proposed rules. And, Your Honor, I can't give you a one-to-one. Here's a piece, something that was given in confidence back in 2007 that was then used against him in 2022. What I'm suggesting is in criminal cases and civil cases, it's different in a lot of ways. Obviously, the burden of proof when somebody is being charged with a crime is beyond a reasonable doubt, which is a standard you don't really see in the civil context. And I would suggest that there should be a higher standard here too. Even if there's not, I think the standard that's laid out in American Airlines establishes that we've got substantially related matters here. You're saying substantially related because they're both criminal. In large part, yes, sir. In part because in a criminal case, it's not just a matter of what does the proof say about what happened in May of 2021 that gave rise to this charge. In the event of conviction, it opens up the Pandora's box. Everything about his background, everything about his entire history and characteristics becomes relevant. And these were things that the lead prosecutor would almost necessarily have had at least some information about derived from that even limited representation back in 2006. And when you say even limited, it was very limited, right? In my memory, we've got a bunch of cases. It was just he showed up for an arraignment on one case or did he go all the way through trial? It was just an arraignment for the afternoon, as I understand it. When there was a hearing on this. Am I right? Because that answers my factual question. That neither below nor to us, you are predicating your conflict argument on the prosecutor's role as a prosecutor in the tribal court. You have not said to us or to the district court that disqualification was necessary because of the times that he prosecuted your client. We have not asserted that, Your Honor. We had limited information about those things. Those were matters that were taken up in tribal court. Mr. Anderson certainly asserted. How many times did he prosecute your client? I believe it was three times. Do you know whether he obtained convictions? I don't recall that, Your Honor. I don't recall whether he did or not. Apologies for that. The language of the American Airlines case points out that this court has taken a more hands-on approach to determining, to resolving these issues and addressing whether or not counsel should be disqualified in any context. And what I would say is that in a criminal matter, given that we've got liberty interests at stake and those types of things, even a higher standard should apply. I don't think we need one necessarily here for Mr. Anderson because they— The Department of Justice has a lot of rules on ethics, and you haven't cited any of those to us, nor the model penal code. They may not all conform. They may be stricter or they may be looser, but the only test you've preserved and presented is American Airlines. Yes, sir, and we're relying on American Airlines. We do believe that it's sufficient. One of the elements of this that's been so sort of baffling to me is that this was hardly some sort of dispositive request that was made by Mr. Anderson. I have a client who I believe in good faith believes that he was getting a pretty raw deal by being prosecuted by somebody who had previously represented him. And I think the standards that are laid out in American Airlines suggest that it's not just about the risk of divulging of confidences. It's not just the risk of, let's see, is this the exact same case or not? It goes beyond that. These are rules designed to protect clients, not lawyers, and clients' expectation and loyalty. You may be right. I'll just ask one more time. What case other than American Airlines would you suggest we look? I'm not aware of any, Your Honor. I'm not aware of any specific that are on point that have to do particularly with this instance of somebody who's a public defender or defense attorney in one area and then is later prosecuting. The relief that was sought was almost nothing. It created almost no burden whatsoever. Well, I thought at the same time you said, and nobody in your office either. We were asserting that. And even if there were nobody in the Southern District, that still wouldn't have created a significant burden at all. In fact, at the time of this trial, Mr. Anderson was represented by myself and another attorney, both of whom practice in the Northern District of Mississippi. There are an awful lot of prosecutors in both the Northern and Southern District of Mississippi. Even in the event that their entire office in the Southern District had been disqualified from representation, a quick e-mail to the Northern District and an assignment of an attorney up there would have been perfectly satisfactory and would have created almost no burden whatsoever. Did Anderson testify at trial? Was he cross-examined by this prosecutor? He was not. He elected not to testify at trial. A lengthy statement of his was introduced by the prosecution. Mr. Anderson elected not to testify, as is his right, of course. Yeah. Okay.  You can save time for rebuttal. You can continue. You still have a minute. There are no questions right now. We're seeing limited remaining time for rebuttal. Thank you. Thank you. Ms. Case? May it please the Court. Jennifer Case on behalf of the government. The President's appellate table with me is Assistant U.S. Attorney Gaines Cleveland. I believe the Court has the case, but if there are questions... Oh, no. I have a lot of questions. Please. Please, Your Honor. I'll start off. A non-disqualification is not immediately appealable, mandamus. You're not disputing that the appropriate way for them to appeal this is after a verdict? We have not argued that, Your Honor. And you, too, are embracing a civil rule as applicable. And I'm going to say that with sort of firmness because a ruling from a... If this is a First Circuit ruling as to when any of 2,000 AUSAs should or shouldn't be disqualified,  and you're urging us to apply the American Airlines test, the substantial relations test. So you aren't, in the government, urging that we apply a higher test, that they would have to show more, like an actual conflict or like confidences were shown to have been used. You're accepting that this civil rule would disqualify AUSAs. Is that correct? Your Honor, we are accepting that for the conflict proposed by Mr. Anderson, that Rule 1.9 of the Mississippi Rules of Professional Conduct embraces this substantial relationship test under subprong A of 1.9. Yes, Your Honor. Okay. I guess then here, I'll throw you a few concerns out. And one fair answer might be it's not the issue in front of us. But to me, when I think of a misconduct allegation, I think of Berger. And it would be foul play, not fair play, for a prosecutor who had a vendetta against a defendant to then prosecute him. Yes, Your Honor. And do you recall in the pretrial hearing on the conflict, Anderson took the stand and said that he had been told that this prosecutor said, quote, if he should ever get his hands on me as a prosecutor, he would hang me. Do you recall that? I recall the statement being made from Mr. Anderson and embracing whatever hearsay backed that statement up. Yes. So the district court hears that – what's the name of the prosecutor here? Kevin Payne. Payne. So Payne prosecuted this defendant three times? Multiple times, Your Honor. Multiple times. I don't know the number three. Okay. And those prosecutions were reflected in all the – he had a huge PSR, tons of arrests. Yes. Okay. Do you know how many times Mr. Payne, as a tribal court prosecutor, indicted but wasn't able to convict him? I do not. I do know that even, for example, with the conviction for taking the grill from his father, that Attorney Payne tried to get that case resolved amicably between the parties and only proceeded with prosecution when that could not happen. Do you remember? You probably read the sentencing here. The sentencing hearing? Yes, Your Honor. You remember there the district court asks Payne, the man who had tried to prosecute him several times, what do you think the recommendation is? And Payne argues against leniency. And then he says, this guy has an extensive criminal history in tribal court. And then he mentions his history of intoxication. Is your position that Payne only knew that from the PSR and the role he's playing as a federal prosecutor so he isn't using his past prosecutorial failures to hang Mr. Anderson? Do you see the question? The only evidence of a prosecutorial vendetta is that here's a statement that Mr. Anderson attached at the end of the hearing. I guess the answer is that isn't the basis for their argument here today, correct? It is not, Your Honor. The only basis they say is he did the arraignment in a criminal defense case and then we had the substantial relations test. Correct, Your Honor. Go ahead with your argument. The court appropriately denied Anderson's motion to recuse the prosecutor. It is Anderson's burden to show that that denial was improper. He has not shown that. He has not shown a substantial relationship. He has not attempted to show a substantial relationship beyond saying that both the 2007 matter and the present matter are criminal in nature, but that cannot be enough. The Mississippi Rules of Professional Conduct in the comments to Rule 1.9 state that the rules are not meant to keep lawyers from being able to get different jobs, and if we remove the word substantial from the substantial relationship test and just say if you touched a criminal case you cannot touch further criminal cases involving another party in an adverse setting, lawyers just couldn't move around. They couldn't have other jobs. The substantial relationship is with respect to the matter. So the matter here was in 2007. It involved a few domestic tribal crimes against a victim who is different than the victim in this case at a place that is different than the place in this case. It involved the witnesses who were different than the witnesses in this case. So almost inconceivable confidences were given to him that would relate to anything that happened here. Inconceivable and also the record says to the contrary. Attorney Payne provided a declaration saying that no such confidences were exchanged, and that's supported by the other record evidence, which was that Anderson and Attorney Payne met for a few minutes in a public setting to make sure that he knew whether he was going to plead guilty or not guilty to the charges. I wonder what we mean by vindictive prosecution. A lot of prosecutors out there are going against organized crime, and they're going to go after it hard. They're going to go after people with the Mexican cartel that's bringing in drugs that's killing people. Is that a vendetta because they're determined to go after those, or you mean vendetta is, it seems to me that we'd have to be talking about vendetta, that there's something personal, there's something apart from the fact that this is a repeat offender before we get into this notion of branding a prosecutor or engaging in a vendetta. The record doesn't speak to any connection that it, I'm sorry. I'm not aware of any cases that draw that distinction, but I can understand why vendetta sounds bad. It's like he's going to act as someone who's innocent of a crime. He's not representing him. He's prosecuting him. Yes, Your Honor, and there's no evidence aside from that hearsay statement that Attorney Payne made any decision related to prosecuting, leading the prosecution against Mr. Anderson for shooting someone. The difficulty arises is when you change sides. Then you trigger another host of protections that are there, and we have rules about that and civil side walling off clients and all that kind of thing. Are you familiar with the practice of the public defender's office and walling off, or is it that they don't take on those cases? I assume they wall off. I cannot speak to their practices. I've seen in court recusals take place and court-appointed counsel come in when the need arises on the defense side. But on the prosecutor's side, we have our own processes, and there were legal advice was sought and obtained before this prosecution continued with this prosecutor without getting into the details of what that advice was. But the government takes its responsibility seriously. Even just an appearance of impropriety, even if it's not Mississippi law?  Based on the actual facts of the subject matter in 2007 and the subject matter of this case, Attorney Payne continued with the prosecution. As I understand, at least in Mississippi Rules 1.9, if the subject matter of the prior representation is substantially related, then that's just a per se, you're out. It's a per se disqualification. We don't then delve into, well, was there anything about that subject matter that was used to disadvantage the prior client? Right. There's a separate subpart to Rule 1.9. No, that's what I was getting at. And then there's a more specific, or you might look at it actually as broader, because the second part speaks to just information. That may not have been obtained from a substantially similar representation or related representation. That just may be information that is had. So that sort of targets – I'm trying to get at what Judge Higginbotham said, that when you switch sides, there's all sorts of different dynamics that go into play. One of them is 1.9a. One of them is 1.9b. Are you aware of any other rules, either in the Mississippi Rules or just in the department's own internal rules that speak to this changing sides problem? Well, I wouldn't embrace problem. Okay. The issues that may arise from when you change sides. So there are other rules of professional conduct. For example, 1.11, which concerns what government former and current employees can do. That's an example one. The ABA model rules have similar ethical standards, professional standards. And then the government has its own conflicts checks that we do routinely and that we keep updated based on what representations we have had since time X and Y. So this is not something that the government walked into without any thought. It was considered and the prosecution continued with attorney pain. Given – I mean, I guess the final question for me is, given that it was so closely looked at, which is commendable and researched, no circuit law in the specific context of criminal? I mean, American Airlines is the test that's being used? Your Honor, I'm not aware of any other test that is existing for evaluating Rule 1.9A, conflict under Mississippi. Or even just generally under any state. So I cannot say that I've done the research on all of the rules of professional conduct,  but I'm certainly not holding back another test that I'm aware of. And there is no substantial relationship here, Your Honor. If I can assist further with the recusal issue. Thanks very much, Counsel. Thank you. Mr. Davis. Thank you, Your Honor. Your Honor, the American Airlines case references this idea of the appearance of impropriety. It's been mentioned a couple times, but specifically notes that that's not the test that's applied. However, the opinion itself notes that loyalty, and the notion of loyalty that someone is going to expect from their attorney, and appearance of impropriety are highly related concepts. It goes on to say that the obligation of an attorney not to misuse information acquired serves to vindicate the trust and reliance that clients place on their attorneys, which is why I'm suggesting a high standard for this. This case is built on your suggestion there's a breach of loyalty. It is not based on there may be a perception of a vendetta from failed or multiple state or tribal prosecutions. Correct. It's a breach of loyalty is what we're asserting here, Your Honor. We did, on Mr. Anderson's behalf, argue that I believe the Southern District, the U.S. Attorney's Office for the Southern District of Mississippi, also essentially be disqualified by extension. Realistically, I don't know that we would be here if it raised this issue, if Mr. Payne had simply been disqualified himself, and another attorney had been appointed to represent him even from that own office. Again, that brings me back to what's been so perplexing to me about this, is there are quite a few attorneys in their office.  In the U.S. Attorney's Office, the Department of Justice here has been insistent on having the one attorney in the entire either district in Mississippi who had represented Mike Anderson before. I sometimes think that this is one of these situations where those of us who have been to law school and those of us who are in the system can look at these rules and parse them in various ways. I think a lot of folks from the outside who look at this would think this is extraordinarily unfair. What harm would they say? Well, maybe. I'm always wary of what the general public thinks about these sorts of things. We have technical rules for a reason. What's the harm? Can you articulate for me what is the harm in Mr. Payne prosecuting Mr. Anderson? Well, the breach of loyalty is a harm. Well, I don't get that because he represented him. He didn't represent him with respect to anything regarding this particular prosecution. So I fail to see where the loyalty. Well, obviously that's what we're asserting is that loyalty was breached. As far as practical harm, in a criminal case as noted, you get to sentencing and even in some limited ways, a trial depending on the circumstances, it goes beyond just the facts of the case. It goes directly. The statute requires that the court consider the history and characteristics of the defendant, things that Mr. Payne had some personal knowledge. But wouldn't that – so that could be a real harm, but isn't that taken care of by the subsection B part about the use of information that disadvantages? Well, I mean subsection B is an or. I mean it's between A and B as I understand it. And so we're – as noted, it's not a situation where I can sit here and tell you, here is a specific thing that Mr. Payne claimed in 2007 that he used against him. You might see it more if the client had testified and was crossed. Perhaps we would have, but Mr. Anderson elected to – And in sentencing, you're right, it comes up. But at sentencing, he does say, well, this guy is sort of a Dr. Jekyll and Mr. Hyde. He does. And then he describes the good as well as the bad. Correct. So he described both things, some mitigating, maybe some aggravating. Again, my position – What do you ask us to do? Your Honor, I think the appropriate remedy for the recusal issue would be for a new trial for Mr. Anderson to be prosecuted by another attorney. But that's the outcome. But how would we say that? How would we put that? That the various duties of loyalty here were breached pursuant to the standard that's laid out in American Airlines and that reversal and remanding for a new trial would be proper. I see I'm very close to out of time. Are there any other questions?  Thank you, Your Honor. That case is submitted. We will call the second case, 23-3006.